IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DOUGLAS GILMAN, SR. (01),<br><br>Defendant. | ) | CR. NO. 06-00198 SOM<br><br>ORDER DENYING DOUGLAS GILMAN, SR.'S MOTION FOR STAY OF IMPRISONMENT PENDING APPEAL AND DENYING MOTION RAISED BY JOINDER |

ORDER DENYING DOUGLAS GILMAN, SR.'S MOTION FOR STAY OF IMPRISONMENT PENDING APPEAL AND DENYING MOTION RAISED BY JOINDER

I. INTRODUCTION.

Douglas Gilman, Sr., was convicted by a jury on December 19, 2008, of conducting an illegal gambling business in violation of 18 U.S.C. § 1955 and of conspiring to do so. On May 18, 2009, the court sentenced the elder Gilman to serve 24 months in prison and ordered him to self-surrender on June 22, 2009. On June 1, 2009, Gilman Sr. filed an appeal.

Gilman Sr. now moves for a stay of imprisonment pending his appeal, pursuant to 18 U.S.C. § 3143(b). Gilman Sr. contends that he is not a flight risk, has not participated in any illegal activities since the FBI searched his home on June 21, 2005, and has viable issues on appeal. The Government concedes that Gilman Sr. does not pose a flight risk or a danger to others but contends that Gilman Sr.'s issues on appeal are not substantial questions likely to result in a new trial or a reversal. The court agrees and DENIES the motion for a stay by Gilman Sr. To

the extent Defendant Douglas Gilman, Jr., and William Gilman join in the motion, the court denies a stay as to Douglas Gilman, Jr., and William Gilman.

II. STANDARD.

Under 18 U.S.C. § 3143(b), a defendant who has filed an appeal must begin serving his or her sentence unless the court finds

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in–
> (i) reversal,
> (ii) an order for a new trial,
> (iii) a sentence that does not include a term of imprisonment, or
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143. If the court makes such findings, it shall order the petitioner released.

The Ninth Circuit has explained that, "properly interpreted, 'substantial' defines the level of merit required in the question presented and 'likely to result in reversal or an order for a new trial' defines the type of question that must be presented." U.S. v. Handy, 761 F.2d 1279, 1280 (9th Cir. 1985).

With regard to the level of merit, the Ninth Circuit defines "substantial" as a question of law or fact that is "fairly debatable, or fairly doubtful. In short, a substantial question is one of more substance than would be necessary to a finding that it was not frivolous." Handy, 761 F.2d at 1283 (internal citations omitted). This court is informed by the Ninth Circuit's view of what has historically constituted a "substantial question":

> The question may be "substantial" even though the judge or justice hearing the application for bail would affirm on the merits of the appeal. The question may be new and novel. It may present unique facts not plainly covered by the controlling precedents. It may involve important questions concerning the scope and meaning of decisions of the Supreme Court. The application of well-settled principles to the facts of the instant case may raise issues that are fairly debatable.

D'Aquino v. U.S., 180 F.2d 271, 272 (9th Cir. 1950). Clearly, establishing that a question is "substantial" does not mean establishing that one is likely to prevail on appeal.

Next, the substantial question of law or fact must be integral to the conviction, such that resolving it favorably to the petitioner would be likely to result in a ruling vacating the sentence or reducing it. 18 U.S.C. § 3143.

III. ANALYSIS.

Gilman Sr.'s motion relies on five alleged errors:

1.  Denial of a severance of his trial from that of his co-defendants;

2.  Admission into evidence of a fourteen-year-old conviction;

3.  The Government's failure to produce FBI 302 reports concerning a witness's pre-trial statements;

4.  The Government's failure to produce FBI 302 reports and other material allegedly in possession of the Honolulu Police Department concerning two witnesses for impeachment purposes;

5.  The application of a sentencing enhancement for an aggravating role.

Douglas Gilman, Jr., and William Gilman allege two additional errors:

6.  The use of jury instructions that paraphrased state gambling laws;

7.  The constitutionality of 18 U.S.C. § 1955.

The first issue, the denial of a severance of trial, was previously raised in a motion filed by Defendant Micha Terragna in which Defendants Kevin Brunn, Gilman Sr., William Gilman (but not, according to the case docket, Gilman Jr.) had joined. Magistrate Judge Barry M. Kurren denied the motion on August 30, 2007, and this judge affirmed in an order filed on

September 21, 2007. Magistrate Judge Kurren and this judge concluded that Defendants had failed to establish sufficient prejudice to warrant severance. The Gilmans argue that this ruling was in error, maintaining that Defendants Kevin Brunn and Micha Terragna had been involved in a conspiracy that was separate and distinct from the conspiracy that the Gilmans were involved in. They claim that the failure to sever Brunn and Terragna resulted in unfair prejudice. The Gilmans do not present any facts to support these allegations, nor were their claims of a separate and distinct conspiracy supported by the evidence at trial. The issue of severance under Rule 14 of the Federal Rules of Criminal Procedure is not a new or novel question, and the facts of this multi-defendant case were not unique or unprecedented. This is not a substantial question.

The second issue is the admission of Gilman Sr.'s 1994 state conviction for gambling. Gilman Sr. asserts that this prior conduct is distinguishable from the conduct at issue in the present case, as he was working as a "stickman" in the 1994 case, while there was no evidence that he was doing so in the present case. He maintains that the fourteen-year-old conviction was admitted for the impermissible purpose of demonstrating a tendency to commit bad acts, in violation of Rule 404(b) of the Federal Rules of Evidence. This court previously denied Gilman Sr.'s motion to exclude the conviction, finding that the act of

running an illegal gambling operation in the past was sufficiently similar to the present charge of operating an illegal gambling operation to be admitted as "proof of . . . knowledge . . . or absence of mistake or accident" under Rule 404(b).  Gilman Sr. does not demonstrate that this is a fairly debatable question, and he cites no conflicting interpretations of the law.

        The next two claims involve FBI 302 interview forms of material witnesses.  Gilman Sr., Gilman Jr., and William Gilman claim that they were entitled to see those interview forms under the Jencks Act, 18 U.S.C. § 3500, which requires production of recorded statements either made or adopted by Government witnesses pertaining to their testimony.  The court ordered production of the FBI agents' and, in some instances, Government counsel's interview notes but not of the FBI 302 forms summarizing the interviews.  The court determined that any statements made or adopted by a witness would have been contained in the original notes, and that the Jencks Act did not require that the defense additionally have access to the reports that were prepared out of the witness's presence.  There was no evidence that the reports had been shown to any witness by the Government.  See Rosenberg v. U.S., 360 U.S. 367, 369-70 (1959) ("No relevant purpose could have been served by giving petitioner's counsel a typewritten copy of a document which he

had already been given in its original form, no advantage to the petitioner was denied by withholding it.”). The Gilmans do not refute this reasoning and do not demonstrate that this presents a substantial question of law or fact.

The Gilmans also claim that the court erred in refusing to order production of FBI 302 forms pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963), which requires production by the prosecution of all evidence favorable to the defendant and material to guilt or punishment. At trial, there was extensive discussion about whether John Saguibo, a Government witness, had acted as a confidential informant. Counsel for some co-defendants claimed that any such evidence would support a possible entrapment defense. The court conducted an in camera review of the Saguibo 302s and ordered portions of the reports relating to his role as a confidential informant turned over to all Defendants. Accordingly, the Gilmans received all Brady material in Saguibo’s 302s, even though the entrapment issue was not relevant to them.

The Gilmans allege that they should have received 302s for Charles Gilman, another Government witness. The defense was in possession of Government agents’ interview notes for Charles Gilman pursuant to the Jencks Act. The court reviewed the 302s in camera to determine whether they included additional information that should be produced under either the Jencks Act or Brady and found no such information. “[T]he trial court need

not release evidence that is 'merely cumulative' of information already available to the defense." U.S. v. Alvarez, 358 F.3d 1194, 1208 (9th Cir. 2004) (citations omitted). Gilman does not here demonstrate that he suffered any prejudice from being denied the 302s. "Brady violations require reversal if there is reasonable probability that the suppressed or false evidence affected the verdict." U.S. v. Gillespie, 852 F.2d 475, 481 (9th Cir. 1988) (citing U.S. v. Bagley, 473 U.S. 667, 679 & n.9, 682 (1985)). The Gilmans fail to show that there is a substantial question that any evidence was suppressed or falsified and is likely to result in reversal.

   The Gilmans also allege that exculpatory information held by the Honolulu Police Department was withheld from the defense. At trial, counsel for co-Defendant Micha Terragna claimed that the HPD had information about the veracity of HPD officers, listed as defense witnesses. Terragna's counsel asserted that the federal prosecutor had a duty to subpoena any such information and to provide it to the defense pursuant to Brady. Counsel for other Defendants expressly withdrew from this request and have arguably waived this issue. In any event, the court denied the request, observing that the federal prosecutor had no duty to seek out information from the HPD that did not arise in the course of the investigation, was not in the custody or control of federal authorities, and was not being offered or relied on by the federal government.

Gilman now cites the Ninth Circuit's recent ruling in United States v. Price, (9th Cir. 2009), for the proposition that

> actual awareness (or lack thereof) of exculpatory evidence in the government's hands, . . . is not determinative of the prosecution's disclosure obligations. Rather, the prosecution has a duty to learn of any exculpatory evidence known to others acting on the government's behalf.

Price, 566 F. 3d at 909 (citing Carriger v. Stewart, 132 F.3d 463, 479-80 (9th Cir. 1997)).

The court in Price described the prosecution's duty to learn of exculpatory information gathered by agents working on its behalf. That case involved a detective who uncovered impeachment evidence while conducting an investigation at the prosecutor's request. It was unclear whether or not the information had been brought to the prosecutor's attention. The court held that the prosecutor's personal knowledge was not dispositive of a Brady violation. Just as it would not satisfy the prosecutor's duty under Brady were the prosecutor to direct his agents to withhold exculpatory information from him, "it would equally undermine Brady for a prosecutor to direct his investigator to perform an investigation and then fail to discover the investigation's full results." Id., 566 F.3d at 909.

Here, there is no indication that any federal attorney or agent came across the kind of HPD material Terragna appeared to be seeking, nor that HPD officers had gathered such material

on behalf of any federal attorney or agent.  There are only vague allegations that the HPD had information that would tend to impeach testimony by HPD officers.  Such allegations are not only beyond the scope of material that the Government has a duty to uncover, they are also insufficient to invoke production by the Government.  The Ninth Circuit in Price required the defendant to demonstrate that information existed and was known to the prosecution to show a Brady violation:

> The proponent of a Brady claim -- i.e., the defendant -- bears the initial burden of producing some evidence to support an inference that the government possessed or knew about material favorable to the defense and failed to disclose it.  Once the defendant produces such evidence, the burden shifts to the government to demonstrate that the prosecutor satisfied his duty to disclose all favorable evidence known to him or that he could have learned from 'others acting on the government's behalf.'

Id. at 910.

The Gilmans do not even identify the nature of any alleged impeachment information.  They certainly do not provide facts supporting an inference that such evidence existed or was known to Government agents involved in the investigation.  The Gilmans therefore do not identify a substantial question of law or fact as to any failure to produce Brady material allegedly held by the HPD.

Gilman Sr. additionally alleges that this court committed reversible error in applying a four-level enhancement

for his aggravating role in the offense as a "leader or organizer" in the gambling operation. Gilman Sr. first argues that the court did not resolve certain factual disputes at sentencing. Gilman Sr. does not identify what those factual disputes are, but he alleges that the evidence at trial did not support the enhancement for an aggravating role. The court disagrees. Extensive evidence was presented at trial establishing Gilman Sr.'s role as the owner and organizer of the illegal gambling business.

Gilman Sr. also challenges the four-point enhancement of his sentence as impermissible double-counting. He points out that his offense was defined by 18 U.S.C. § 1955, which provides for a fine or imprisonment of one who "conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business." He argues that the application of a sentencing enhancement for his leadership role in the illegal gambling business punishes him for the same conduct required for conviction. The Ninth Circuit explains that impermissible double counting occurs when a court applies more than one sentencing guideline based on the same harm:

> Thus, the use of a single aspect of conduct both to determine the applicable offense guideline and to increase the base offense level mandated thereby will constitute impermissible double counting only where, absent such conduct, it is impossible to come within that guideline. If, on the other hand, it is possible to be sentenced under a particular offense guideline without having

> engaged in a certain sort of behavior, such behavior may be used to enhance the offense level, for in this situation, the guideline's base offense level will not necessarily have been set to capture the full extent of the wrongfulness of such behavior.

U.S. v. Reese, 2 F.3d 870, 895-96 (9th Cir. 1993).

This case does not involve any alleged double-counting by virtue of duplicative guidelines. Rather, Gilman Sr. claims that a guideline duplicates a statute of conviction. But Gilman Sr. could have been sentenced under 18 U.S.C. § 1955 without playing a leadership role. While the statutory language "conducts, finances, manages, supervises, directs, or owns" may be read to include leadership, the Ninth Circuit has explained that all participants who contribute to the operation of an illegal gambling business fall under § 1955. "Each person, whatever his function, who plays an integral part in the maintenance of illegal gambling, conducts an 'illegal gambling business' and is included within the scope of § 1955. The sole exception is the player or bettor." U.S. v. Sacco, 491 F.2d 995, 1003 (9th Cir. 1974). As Gilman Sr. could have been convicted under § 1955 without acting in a leadership capacity, it was not impermissible double-counting to apply a guideline enhancement recognizing his leadership role. See generally U.S. v. Eaton, 934 F.2d 1077, 1079 (9th Cir. 1991) (express threats to bank teller were not impermissibly double counted because the defendant could have been sentenced for bank robbery through mere

intimidation). Gilman Sr. cites no law on this issue at all. Given the Ninth Circuit's discussion in Sacco making it clear that no leadership role is required for a conviction under § 1955, it cannot be said that Gilman Sr.'s double-counting argument is "fairly debatable."

As this court concludes that the double-counting argument is not a substantial question, this court need not address whether, if successful, the argument would likely result in a reduced prison term that would be shorter than the expected duration of the appeal. The court in any event questions Gilman Sr.'s argument that the appeal would likely take longer than his prison term if the aggravating role enhancement were not applied. Without that enhancement, Gilman Sr.'s advisory guideline range would be ten to sixteen months. A mid-range sentence would be thirteen months, which could potentially be reduced for good time. Gilman Sr.'s opening brief is due on September 2, 2009, and his reply brief is due by October 16, 2009. Gilman Sr.'s concern about the duration of the appeal assumes that Gilman Sr. will file his briefs at the last possible moment. Gilman Sr. himself could control this by filing briefs ahead of the deadlines, thereby addressing his concern about the duration of his appeal.

In their joinder, Gilman Jr. and William Gilman allege an additional error in the jury instructions. The instructions paraphrased and summarized state law, rather than providing the

statute to the jury in full. The Gilmans fail to identify any law requiring the use of statutory language in jury instructions, and this court knows of no such requirement. Further, the Gilmans fail to identify any inaccuracy in the instructions as given. The Gilmans accordingly do not raise a substantial issue of law or fact as to the validity of the jury instructions.

Gilman Jr. and William Gilman also question the constitutionality of 18 U.S.C. § 1955. They cite three Supreme Court cases from the last fourteen years that have invalidated federal statutes for exceeding congressional power under the Commerce Clause: United States v. Lopez, 514 U.S. 549 (1995); United State v. Morrison, 529 U.S. 598 (2000); and Jones v. United States, 529 U.S. 848 (2000). However, the Gilmans concede that the constitutionality of 18 U.S.C. § 1955 has been upheld by every circuit, including the Ninth Circuit in United States v. Sacco, 491 F.2d 995. In holding § 1955 constitutional, the Ninth Circuit in Sacco observed, "Legislative history reveals that Congress had a rational basis for finding that the illegal gambling proscribed by § 1955 affected interstate commerce." Id. at 999. The Gilmans do not explain why this conclusion is invalid based on Supreme Court rulings that other statutes lack such a nexus to interstate commerce. The Gilmans do not allege any facts that would indicate that the statute is unconstitutional as applied to them. As the constitutionality of

§ 1955 is not in doubt, the Gilmans do not identify a substantial question on this issue.

IV.     CONCLUSION.

The Gilmans do not demonstrate that there are substantial questions on appeal. The motion for a stay of imprisonment is accordingly DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 23, 2009.



    Susan Oki Mollway
    /s/ Susan Oki Mollway
    United States District Judge

United States of America v. Douglas Gilman, Sr., CR. NO. 06-00198-01 SOM; ORDER DENYING DOUGLAS GILMAN, SR.'S MOTION FOR A STAY OF IMPRISONMENT PENDING APPEAL AND DENYING MOTION RAISED BY JOINDER.